FIDELITY AND GUARANTY INSURANCE CORPORATION, a corporation of the State of Maryland,

COMMERCIAL UNION ASSURANCE COMPANY LIMITED, a corporation of the State of New York,

NEW YORK FIRE INSURANCE COMPANY, a corporation of the State of New York, and

OHIO FARMERS INSURANCE COMPANY, a corporation of the State of Ohio,

Appellants, v. ELSIE MONDZELEWSKI, Appellee.

*(October* 25, 1955.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Stephen E. Hamilton, Jr.* (Albert L. Simon with him on the brief) for appellants.

*Charles L. Paruszewski* for appellee.

*Januar D. Bove, Jr.* (William F. Lynch, II, with him on the brief), City Solicitor for the City of Wilmington, *amicus curiae.*

Supreme Court of the State of Delaware, No. 5, 1955.

SOUTHERLAND, C. J.:

The facts of this case are stated in our prior opinion. See 115 *A.* 2d 697. We held in that opinion that in a suit on fire insurance policies, in which the insured claims a total loss by reason of enforced demolition of the buildings after the fire, the insurer may defend by asserting either the invalidity of the ordinance requiring demolition or the invalidity of the action of the Building Inspector under it.

The ordinance in effect requires such demolition if damage by fire exceeds fifty per cent of the assessed value of the buildings. It was urged that this provision was unconstitutional on its face, as embodying an arbitrary standard—assessed value, which may or may not bear a reasonable relation to real value.

We refused to hold the ordinance void on its face, saying that the question before us was not solely a question to be decided upon a reading of the ordinance. We therefore ordered reargument upon the following questions:

"Was the condemnation order valid in the light of the facts of this case?

"In particular:

"(a) May Section 45 of Chapter 25 be construed as establishing a ratio between damage and true value, dependent upon the standard of assessment fixed by the Board of Assessment under Sections 74 and 78? And if so, may that ratio be applied to true value to determine the reasonableness of any condemnation order, irrespective of the amount of the assessment?

"(b) If the answer to (a) is No, what result follows?"

We have now had the benefit of additional briefs and argument of counsel upon these questions, including a brief and argument from the City Solicitor for the City of Wilmington.

We start with the rule that the ordinance must be so construed, if it is fairly possible to do so, as to avoid the conclusion that it is unconstitutional. *Collison v. State ex rel. Green,* 9 *W. W. Harr.* (39 *Del.*) 460, 2 *A.* 2d 97, 119 *A. L. R.* 1422. If its provisions are reasonably susceptible of an interpretation that will render it valid, that interpretation should be adopted. We think that they may be so construed.

Section 74 of the City Charter, relating to the assessment of real estate, provides in part:

"The assessment of real estate shall be made according to a certain rate in and upon every hundred dollars of the estimated full value of the property assessed, and so *pro rata.* All assessments upon real estate shall be so made as to show separately the valuation of ground, the improvements if any, and the total valuation of the property assessed. * * *"

Section 78 provides:

"The Board of Assessment shall establish rules by which to value the buildings and improvements, and all buildings and improvements must be valued according to the rules so estab-

lished, so far as the same may be practicable. If, however, it should appear that the combined assessment on the land and buildings according to the rules above provided for does not represent the true value thereof, then the said Board shall place whatever value on the buildings as may be necessary to make the combined value true and correct."

These statutes, read together, are somewhat ambiguous. They may be construed as requiring the assessment to be made at the full value of the property; or, alternatively as permitting the adoption of a "rate", *i. e.*, a fixed percentage of the true value. We suggested in our prior opinion that the latter construction appeared to be the likely one, but the companies and the city are in agreement that the intent of the statutes is to require assessment at full value. The City Solicitor tells us that they are so construed in practice. We accordingly accept this construction as correct. In so doing we do not for a moment suggest that the statute forbids the assessors to devise a formula for the ascertainment of value, and apply to that formula a fixed percentage if by so doing a fair and uniform assessment results. See *Brennan v. Black, Del.*, 104 *A.* 2d 777, 793-794.

Now the condemnation ordinance must be read in the light of the assessment provisions of the Charter. When the ordinance fixes the test of demolition as damage exceeding fifty per cent of assessed value, it does so upon the assumption that assessed value is real value. The Building Inspector must so assume, and if he finds that the damage exceeds fifty per cent of the value shown on the assessment roll he must issue an order of condemnation.[1] He has no discretion in the matter.

But this order is an *ex parte* one, and is not conclusive against the property owner or, if there is insurance, upon the insurer. As to them, the ordinance is to be construed as establishing a ratio of damage to real value. Either may challenge the

[1]Unless, of course, the property owner reconstructs the building in accordance with the requirements of the Building Code.

validity of the order by appropriate proceedings for that purpose. The inquiry must then be whether the damage exceeds fifty per cent of real value. If it does, the condemnation order is valid; if it does not, it is invalid. The determination of the validity of the order thus rests upon the ascertainment of two facts—real value of the buildings immediately before the fire, and amount of loss and damage.

This construction of the provisions of the ordinance is, we think, a fairly possible one and should be adopted. A construction that would preclude inquiry into real value would result, in cases of great disparity between real and assessed value, in arbitrarily denying the property owner the right to make reasonable repairs. That result, as we said in our first opinion, could not constitutionally be upheld.

The companies insist that even if this construction be adopted and the validity of the ordinance upheld, yet the order of condemnation must be held void as a matter of law upon the undisputed facts of the case. It is said that the value of the buildings before the fire, and the amount of loss, are conclusively fixed by the appraisal as $8,225.90 and $1,500 respectively.

This argument appears to have two aspects. It is first contended that the award is binding as a matter of contract. The difficulty with this contention is that if a total loss is shown, whether actual or constructive, the appraisal provisions are overridden by the valued policy statute. See 6 *Appleman, Insurance Law and Practice* § 3949, and cases cited. The findings of the appraisers are, of course, admissible evidence to prove sound value and loss, but they are not conclusive in a case in which the insured claims a total loss. Other evidence may be offered, and the facts are for the court below—or for the jury, under proper instructions—to determine. If, however, the facts so found do not establish a total loss, that is, if the ratio of loss to sound value does not exceed fifty percent, the loss is not total and the award is binding, regardless of the amount of loss so found. In that event, judgment should be entered in the amount of the award—$1,550.

██ The second aspect of the companies' contention relates to estoppel. It is suggested that by voluntarily entering into an appraisal the insured is estopped from attacking it. The difficulty with this contention is that there are no facts in the record to support it. Under the valued policy statutes the insured does not waive his right to recover as for total loss by merely consenting to an appraisal. See the cases cited in 6 *Appleman*, § 3949. Before an estoppel can exist, there must appear some conduct of the insured misleading the insurer to its detriment. No such evidence appears.

On remand, however, this issue is open for determination, as well as any contention by plaintiff (if there is any) with respect to estoppel. And since the order on plaintiff's motion for summary judgment must be reversed, all other issues are also open for determination, except to the extent that they may be foreclosed by stipulation.

We say "may be foreclosed" because the parties are not in agreement upon the effect of the stipulation of November 22, 1954. The stipulation was entered into after the denial of defendant's motion for summary judgment, and apparently in connection with plaintiff's motion for summary judgment filed November 24, 1954. The facts stipulated are (1) that the buildings were only partially damaged by the fire, and (2) that the order of condemnation of the Building Inspector was based solely on the fact that the damage exceeded fifty percent of the assessed value of the building. Plaintiff, we gather, contends that this stipulation, though approved by the court, was entered into only for the purpose of facilitating the disposition of plaintiff's motion for summary judgment, and was not intended to bind the plaintiff if the motion should be denied—as we have now held it should have been. The companies vigorously assert the contrary. The point is of importance, because plaintiff appears to contend that the condemnation order was based in part on a finding by the Building Inspector that the damaged buildings constituted a fire menace and were dangerous and unsafe, in violation of the pro-

visions of Section 45(a) of the Building Code. See paragraph 1(e) of the amended complaint, and paragraph 5 of the affidavit of the Building Inspector quoted in our prior opinion, 115 *A.* 2d 701.

Plaintiff's contention that the stipulation is no longer binding will be for the trial judge to pass upon, since he is familiar with the circumstances under which the stipulation was executed. If the stipulation is now binding, the issues are correspondingly narrowed. If not, plaintiff will be at liberty to press the contention that the condemnation order does not rest solely on the fifty per cent clause of the ordinance.

The cause is remanded to the Superior Court of New Castle County, with instructions to vacate the judgment of December 6, 1954, and for such further proceedings as may be consistent with this opinion.