**METROPOLITAN MUTUAL FIRE INSUR-
ANCE COMPANY, Appellant
Cross-Appellee,**

v.

**CARMEN HOLDING COMPANY, a Dela-
ware corporation, Appellee Cross-
Appellant.**

Supreme Court of Delaware.

June 3, 1966.

Vincent A. Bifferato, Wilmington, for appellant, cross-appellee.

Joseph T. Walsh, Wilmington, for appellee, cross-appellant.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice.

The defendant below (Metropolitan) has appealed from a judgment of the Superior Court, and the plaintiff below (Carmen) has filed a cross-appeal. The case was tried without a jury. The question raised by the appeal is whether the trial Court erred in finding that there was a constructive total loss of a building caused by fire. The point raised in the cross-appeal is whether Carmen is entitled, as a matter of law, to ante-judgment interest on the principal sum due it.

Metropolitan issued a fire insurance policy to Carmen in the amount of $7000 upon a building at Front and West Streets in Wilmington. During the policy period, a fire occurred. Although the entire building was not consumed, Carmen claimed the loss was total because of certain provisions of the Wilmington Building Code. Metropolitan disagreed. The Court found that there was a constructive total loss, and entered judgment for Carmen in the full amount of the policy, but denied ante-judgment interest as a matter of discretion.

I

The finding of total loss was based upon the same ordinance quoted in full in Fidelity & Guaranty Ins. Corp. v. Mondzelewski, 10 Terry 306, 115 A.2d 697. Briefly, it provides that any building which becomes dangerous or unsafe shall be made safe or removed, and that, if the cost of reconstruction exceeds fifty percent of its assessed value, the building shall be made to conform to the building requirements of the City Code. That Code prohibits frame construction in the area where this property is located. The policy issued by Metropolitan was in the standard form and insured Carmen to the extent of the "actual cash value" of the building at the time of the loss, not exceeding the cost to repair or replace the property with material of like kind and quality without regard to any law regulating repair. In the Mondzelewski case, supra, this Court pointed out that this policy provision applies only to partial losses; if the loss is total, the applicable rule is found in our valued property statute, T. 18 Del.C. § 1102, which provides that in such case the amount of insurance shall be conclusively taken to be the true value of the property and the true amount of loss. The statute also requires that the policy shall bear an indorsement of agreed value which shall be binding on the parties. In the present case, no such indorsement was placed on the policy. This Court also held in Mondzelewski that there is a constructive total loss even though the building is not entirely destroyed, if the insured is prevented by law from making repairs.

The trial of the present case was conducted according to the foregoing principles. The Court found from the evidence that the "true value or market value or actual cash value" of the building immediately before the fire did not exceed $7000. Metropolitan argues that the Court should have relied upon "replacement value" instead of "true, market or actual cash value". Apparently, replacement value was relied upon by the City Building Inspector in giving his testimony; it presumably represents his interpretation of the Wilmington ordinance, although we are unable to perceive how he reaches that conclusion un-

less he considers replacement value to be synonymous with "real or true value". The ordinance itself refers only to assessed value but this Court held in the second Mondzelewski opinion, 10 Terry 395, 117 A.2d 369, that, for constitutional reasons, as to the owner or insurer the ordinance must be construed as establishing a ratio of damage to real value; and that an order of condemnation would be invalid if predicated solely on assessed value where the assessed value is considerably below the real value. In Mondzelewski, supra, the term "real value" was not defined. However, in Fitzsimmons v. McCorkle, Del., 214 A.2d 334, we pointed out that the expressions "full value", "actual value", and "true value" mean actual or fair market value, which we defined to be the price which would be agreed upon by a willing seller and a willing buyer, under usual and ordinary circumstances, without any compulsion upon the seller to sell or upon the buyer to buy, assuming the highest, best and most valuable use for which the property is reasonably adaptable and available. We think the term "real value" is synonymous with the foregoing expressions. "Replacement value" is not a synonym, however. 2 Couch on Insurance 2d, 54:137. It is usually admissible in evidence as a means of helping the trier of fact to determine market value; see Brennan v. Black, 34 Del.Ch. 380, 104 A.2d 777; but it is not conclusive and in fact is frequently entitled to little weight. 2 Orgel on Valuation under Eminent Domain, (2d Ed.) § 199. It is obvious that the trial Judge meant "fair market value", as defined in Fitzsimmons, supra, when he used the expressions "true value" or "market value" or "actual cash value", and that he correctly applied that definition in reaching his conclusion.

Metropolitan cannot complain of any refusal to receive evidence proffered by it because every item of evidence of value which it offered was admitted. Its evidence showed only replacement cost minus depreciation—a figure of about $33,000.

Metropolitan suggests that Carmen presented only evidence of assessed value. On the contrary, while Carmen showed the assessment to be $5900, it also produced an appraisal, admitted without objection, indicating a fair market value of $6500, according to two real estate experts. Moreover, the president of Carmen gave his personal opinion that its value before the fire was $7000. Carmen offered a prior insurance policy as evidence of value but the Court ruled it inadmissible for that purpose. Neither party offered any testimony as to rental or income value.

■ Metropolitan suggests that we should, after reviewing the record, reverse the finding of value made by the trial judge. Since the court below heard the evidence, our duty on review is to weigh the evidence in the cause and to test it for sufficiency to support the findings of the court below. Nelson v. Murray, Del., 211 A.2d 842 (1965). We have done so, and we are of the opinion that the evidence is sufficient to support the findings of the court below.

■ The present appeal raises no question concerning the finding made by the Judge as to the cost of repair, which he found would exceed $7000. As we have indicated, there is before us no question of admissibility of evidence concerning value. We must assume that the trial Judge considered and evaluated all the admitted evidence. We think there was justification for his rejection of replacement costs in making his determination of fair market value. In determining what testimony to accept and what to reject, he was aided by certain other evidence. There were, for example, some pictures of the building to verify certain testimony that it was an old three-story brick building. Aside from a small store, it contained a three-family residence, apparently actually occupied by more than three families. The Judge pointed out its very undesirable location for residential use because of its close proximity to busy railroad tracks, junk

yards, industrial and commercial establishments and other old multi-family residences in bad repair. There was some indication that the building was heated only by portable gas heaters and cooking stoves; there were thirteen cooking stoves in this building of eighteen rooms. Although the fire was confined largely to three rooms, there was evidence that many other parts of the building had been extensively damaged by smoke and water. After the fire, city authorities ordered the entire building evacuated and a few days later the Building Inspector condemned it as dangerous and unfit for human habitation; some of the conditions he gave as reasons for that action existed before the fire.

█ Considering all the evidence in the record, we are of the opinion that the conclusion reached by the trial Judge is supported by ample testimony and is based upon a correct understanding of the law. We see no reason to reverse that conclusion.

## II

In its cross-appeal, Carmen charges error in that the inclusion of interest is not discretionary but is a matter of right. This Court has never before had occasion to consider the question.

In Superior Tube Co. v. Del. Aircraft Industries, 60 F.Supp. 573 (D.C.Del.), Judge Leahy made an exhaustive examination of the reported Delaware cases and concluded that they uniformly allowed interest as a matter of law, even in certain types of torts, in order to give a victorious plaintiff full compensation for a wrong suffered by him. Later, Judge Rodney, who was for many years a member of the State Judiciary, agreed that the "over-whelming and modern rule in Delaware" requires allowance of interest for certain torts because full compensation requires an allowance for the detention of the compensation awarded and interest is used as the basis for measuring that allowance. E. M. Fleischmann Lbr. Corp. v. Resources Corp. Inter., 114 F.Supp. 843, 845 (D.C. Del.). The rulings in those two cases correctly reflect the holdings of the majority of reported Delaware decisions.[1]

Decisions in other jurisdictions are in hopeless conflict. See annotation in 154 A.L.R. 1360. For example, in an action on a fire insurance policy in New Jersey, interest was said to be discretionary. Feinbloom v. Camden Fire Ins. Assn., 54 N.J. Super. 541, 149 A.2d 616. In a similar suit in Pennsylvania, interest was held to be a matter of right. J. Purdy Cope Hotels Co. v. Fidelity-Phenix Fire Ins. Co., 126 Pa. Super. 260, 191 A. 636. The latter decision is in accord with all the Delaware cases we have found involving suits on insurance contracts. Lattomus v. Farmers' M. I. Co., 3 Houst. 404; Mauck v. Merchants' & M. Fire Ins. Co., 4 Pennewill 325, 54 A. 952; Schilansky v. Merchants' & M. Fire Ins. Co., 4 Pennewill 293, 55 A. 1014; Reed v. Continental Ins. Co., 6 Pennewill 204, 65 A. 569; Keatley v. Grand Fraternity, 2 Boyce 511, 82 A. 294; Brooks Transp. Co. v. Merchants' Mutual Cas. Co., 6 W.W.Harr. 40, 171 A. 207; Culver v. Prudential Ins. Co., 6 W.W.Harr. 582, 179 A. 400.

█ In short, the Delaware authorities have uniformly treated interest as a matter of right rather than discretion in cases like the present one. We think the principle is firmly imbedded in our law and must be applied here. There may be cases

---

1. In the Superior Tube case, supra, the footnotes list nearly all the Delaware cases. In Fleischmann, supra, a few tort cases are mentioned in which a contrary rule was applied. We note that Randel v. President, etc., of Chesapeake & Delaware Canal Co., 1 Harr. 233, 318, is incorrectly placed in this category; the headnote therein does not correctly summarize the actual decision. Burton v. Hearn, 1 Del.Cas. 78, interest in an assumpsit action was left to the jury's discretion but in Cloud v. Cloud's Admr., 1 Del.Cas. 471, in an action of debt, the Court held that the jury could not refuse interest.

where the rule is somewhat affected by other considerations, such as long delay on the part of a plaintiff in prosecuting his action, as is pointed out in the Fleischmann case, supra. No such factor exists here.

The general rule is that interest starts on the date when payment should have been made. The policy in this case contained a standard provision requiring payment within 60 days after the filing of a proof of loss. The end of that period is usually considered the time from which interest shall run. We think the rule should be applied to the present case.

The judgment below must be modified by adding interest upon the amount of the policy; as so modified, it will be affirmed.