**In the Interest of Sandra K. WATSON, Petitioner,**

v.

**Charles C. GIVENS, Respondent.**

**File No. CS94–3315.**

Family Court of Delaware, Sussex County.

Submitted: June 3, 1999.
Decided: Nov. 10, 1999.

---

Bruce A. Rogers, of Rogers & Mooney, P.A., Georgetown, Delaware, for the petitioner.

David Weidman, of Hudson, Jones, Jaywortt & Fisher, Georgetown, Delaware, for the respondent.

MILLMAN, J.

Sandra K. Watson ("wife") has filed a petition against Charles C. Givens ("husband") requiring him to show cause why he should not be held in contempt of an order of this Court dated March 5, 1997. This order divided the marital estate of the parties and granted wife an award of counsel fees. Wife now seeks a finding of contempt against husband and as a sanction asks to have him incarcerated until the terms of the order are satisfied. This is the Court's decision on the petition for Rule to Show Cause.

## THE LAW OF CIVIL CONTEMPT

■ In resolving the issue of contempt, it is important to first set forth the law of civil contempt as it exists in this state. It is not disputed by husband that this Court has not only the statutory authority[1] but the inherent authority[2] to punish contempt when a finding is made. This broad

---

1. 10 *Del. C.* § 925(3); *DiSabatino v. Salicete,* Del.Supr., 671 A.2d 1344 at 1350 (1996).

2. *United Mine Workers v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, at 2559, 129 L.Ed.2d 642 (1994) (quoting *Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204, 225, 5 L.Ed. 242 (1821)).

civil and criminal contempt power with which the Court is vested has been explained traditionally as follows:

> Courts independently must be vested with power to impose silence, respect and decorum in their presence, and submission to their lawful mandates and . . . to preserve themselves and their [judicial] officers from insults . . . [3]

Three criteria must be met to support a finding of contempt: 1) there must exist a valid mandate, judgment or order; 2) the alleged contemptor must have had the ability to abide by the valid mandate, judgment or order; and, 3) the alleged contemptor must have, in fact, disobeyed the valid mandate, judgment or order.[4]

■■■ In applying this criteria, wife must show a violation of the Court order by clear and convincing evidence.[5] Only in criminal actions initiated by the state is the burden of proof required to be that of beyond a reasonable doubt.[6] Moreover, in a civil contempt proceeding, it is not a defense that the party in contempt have subjective intent to violate the Court's order.[7] Malice or some other elevated state of mind is not a necessary requisite for imposition of sanctions relating to contempt.

■■■ It is a well established principle of law that simply because the penalty or sanction imposed by a court regarding a charge of contempt happens to be imprisonment, it does not necessarily mean that the sanction is criminal in nature.[8] In fact, our Supreme Court said:

> While the distinction between civil and criminal contempt is often not exact, the general guidelines are determinative in the instant proceeding. The two types of contempt are distinguished not on the basis of the offending action in question, but on the basis of the purpose of the proceeding, which is usually indicated by the type of sanction applied. . . . If the purpose is coercive or remedial, the proceeding is civil; if the purpose is punitive, the proceeding is criminal. . . . It is remedial and coercive, not punitive, because it is not a determinate sentence designed to punish disobedience to a Court order which cannot be redressed; rather it is aimed at forcing the [husband] to comply with the Court's order, imposing upon the [husband] a continuing incentive to refrain from [disobedience of the order] by relieving [him] of the burden of imprisonment so long as there is compliance.[9]

With this understanding of the law of contempt, we turn to the case at bar.

## FACTS

After a full trial on the issues of the division of the marital estate, alimony, counsel fees and costs, on March 5, 1997, the Court entered its order dividing the marital estate, granting a larger share of the marital estate in lieu of alimony and granting an award of counsel fees to wife. As a part of its order, the Court awarded wife $64,721.70. This award represented wife's cash interest in the marital estate and counsel fees. Husband did not appeal the Court's decision.

To assist wife in securing payment of the cash award, the Court granted her a

---

3. *Id.*

4. *See, Division of Child Support Enforcement v. Logue,* Fam. Ct., 598 A.2d 704, 705 (1991).

5. *Dickerson, et. al. v. Castle, et. al.,* Del. Ch., C.A. No. 10256, 1991 WL 208467, Chandler, C. (Oct. 15, 1991) (Mem.Op.).

6. *State v. Gilpin,* 1 Del.Ch. 25 (1817).

7. *State of Delaware Dept. of Serv. For Children, Youth and their Families v. Cedars Acad-emy,* Del. Ch., CA No. 1399S, 1989 WL 134868, Allen, C. (Oct. 30, 1989).

8. *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

9. *Delaware State Bar Ass'n v. Alexander,* Del. Supr., 386 A.2d 652, 665, relying in part on *Wilmington v. General Teamsters Local Union,* Del.Supr., 321 A.2d 123 (1974).

judgment which she subsequently recorded in the Prothonotary's Office in Sussex County.

Wife filed this present action alleging that husband had failed to pay the sum ordered by this Court. Husband filed a general answer denying that he was in violation of the Court's order. A telephone conference was subsequently held by the Court with counsel for the parties and as a result of that conference, wife offered to dismiss her pending action if 1) a monthly payment agreeable to wife would be made by husband, 2) husband would provide wife with proof of his efforts to secure financing to pay the judgment in full, and 3) a *fi. fa.* attachment would issue to Nanticoke Homes for whom husband worked as an independent contractor.[10]

A Stipulation between counsel was filed with the Court on February 6, 1998, which differed from the verbal offer made during the telephone conference with the Court in that 1) husband agreed to pay $2,400 upon execution of the Stipulation by husband's counsel, 2) husband agreed to pay $300 per month to wife commencing February 1, 1998, and continuing until the judgment was paid in full or a hearing on the petition for Rule to Show Cause was held, 3) husband agreed to provide within 10 days proof of his efforts to obtain financing to pay wife the sum due her on the judgment, and 4) pending receipt of proof of the refinancing efforts, the prosecution of the petition for Rule to Show Cause would be held in abeyance. No reference was made

to the *fi. fa.* attachment action in the Stipulation.[11]

At the outset of the trial on the petition for Rule to Show Cause, husband stipulated that he had not paid the judgment in full.[12] As part of his defense to the contempt petition, husband raised his inability to pay the judgment. In support of this, husband testified to the monthly living expenses for himself, his current wife and their minor child. Included in those monthly expenses were approximately $1,846 which husband claims he is currently paying to wife, directly or indirectly, for her benefit as required by the Court's order.[13]

Husband's testimony indicated that his monthly income was approximately $1,000 less than his monthly expenses.[14] His cross examination testimony, however, revealed that husband was only attributing his income to the household cashflow picture, but was assessing himself with all the household expenses incurred by himself, his wife, and their child. Husband's current wife's income of approximately $18,300 per year was not included in his analysis of his monthly household income and expenses.

Husband's accountant testified that in October, 1998, during the pendency of this action, husband incorporated his masonry business which he had received as his sole property in the Court's order of March 5, 1997. By this incorporation, husband and his current wife are each 50% owners of

10.  *See,* Page 12, Transcript of 1/18/98 telephone conference.

11.  By letter agreement with wife, the *fi. fa.* attachment was stayed conditioned upon the fact that 1) husband pay $3,000 by March 4, 1998, 2) husband pay $600 per month to wife on the first of each month commencing April 1, 1998, and 3) the Family Court proceedings would remain the same.

12.  It is stipulated that as of the date of trial, husband has paid the sum of $14,700 to wife on the judgment. This payment excludes any interest that may be due and owing to wife.

13.  This $1,846 consists of $600 on the judgment, $480 on the first mortgage on the marital home in which wife resides and under the order, husband is required to pay, and $686 on a loan to satisfy the second mortgage on the marital home which husband was ordered to assume. The second mortgage was presumably used by husband during the marriage to finance equipment purchases for his business.

14.  *See,* husband's Exhibit 1 (husband's Household Cashflow).

the corporation.[15] All business vehicles, including the vehicle husband operates and company equipment, which were previously solely owned by husband immediately after the March 5, 1997 order, are now owned by the corporation. Husband has no vehicle titled in his individual name nor any other known asset in his individual name.

The accountant also testified that the business records supplied to her by husband for the purpose of preparing his 1998 individual and corporate tax returns indicated that during the first nine months of 1998, prior to the incorporation, husband's sole proprietorship grossed approximately $231,757. For the last three months of 1998, when husband operated as a Subchapter S Corporation, the corporation grossed $109,783. Husband previously testified that Nanticoke Homes, Inc., a modular home builder for whom husband had worked as an independent contractor laying foundations for houses built by Nanticoke Homes, had been his biggest client. Indeed, the 1099 Form provided husband for 1998 by Nanticoke Homes, Inc. indicates that the company paid Charles C. Givens Masonry, Inc. $264,272.34.[16]

With this factual background the Court turns to the issues raised by husband.

## ISSUES

First, husband contends that the parties have reached a separate and independent contract which now controls and any breach of that contract must be dealt with under normal contract remedies. Secondly, husband maintains that even in the event that he is found to be in contempt, he can not be imprisoned because to do so would constitute incarceration for a debt. Lastly, husband asserts the defense of impossibility of performance, *i.e.*, payment, alleging such impossibility prohibits a finding of contempt.

The Court will address each of these issues.

## THE CONTRACT:

## NO CONSIDERATION; NOT A TRADITIONAL DEBT

Husband contends that the parties have a valid agreement which sets forth terms that require this Court to dismiss wife's petition for Rule to Show Cause.

■ Husband correctly contends that "[a]cceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offeror."[17] Before a contract is valid, however, other elements must be met. For instance, consideration is an essential element of all contracts. In this case there is no consideration. Where a party is under a duty created or imposed by law to do what he does or promises to do, his act or promise is clearly of no value and is not sufficient consideration for a promise given in return.[18] This general principle applies to a valid judgment.[19]

■ In this case, husband did not appeal the Court's order of March 5, 1997 from which this judgment arose. The validity of the Court's order and judgment is not questioned. Furthermore, husband gave no additional consideration beyond an

15. The record does not reflect the exact nature of the ownership of the corporation by husband and his current wife, *i.e.*, is the stock of the corporation owned jointly or does each own 50% of the corporation individually?

16. Husband did not provide the Court with a 1099 Form for his sole proprietorship for the nine months of 1998 from Nanticoke Homes. Obviously, there is an unexplained discrepancy between the income received by the corporation as testified to by husband's accountant

and the information allegedly provided by Nanticoke Homes by way of the 1099 Form. No official from Nanticoke Homes testified.

17. Restatement 2d of Contracts § 53.

18. *See, Szymanska v. Equitable Life Ins. Co.*, Del.Supr., 183 A. 309 at 314 (1936).

19. 17 C.J.S. Contracts § 111.

offer of satisfaction of the original order for the staying of the execution of the judgment. There is nothing in the underlying facts or procedural history of this case that would constitute the existence of consideration and, as such, there is no valid contract between the parties.

█ Husband further contends, based on the contractual nature of the parties' relationship, that a debt has been created and that the Court cannot imprison him for failure to pay that debt. This Court does not agree. This Court is in agreement with the jurisdictions that have held that a monetary obligation due from one former spouse to another is something more than a debt.[20] Courts have long recognized that the unique relationship of husband and wife is not merely of a contractual nature. The Supreme Court of Nevada addressed the issue of the financial obligation of one spouse to another arising out of the marriage.[21] The issue before the Court was whether the sum owed one spouse to another for support was a debt. If it were a debt, the Nevada State Constitution would not permit the non-paying spouse to be incarcerated for failure to pay. The Court held that,

> A debt in the sense used in the Constitution alludes to an obligation growing out of a business transaction, and not an obligation arising from the existence of the marital status.... It is a mere allowance for support and maintenance a duty growing out of the marriage status; a duty which sound public policy sanctions to compel one who is able so to do, possibly as a result of the co-operation (during coverture) of his former wife, to

prevent such former wife from becoming a public charge or dependent upon the charity of relatives or friends ... the Constitution prohibits imprisonment for debt. But, it is uniformly held, and such is the [true] doctrine, that the decree for alimony is an order of the court to the husband, compelling him to support his wife by paying certain sums, and thus perform a public as well as a marital duty. Such a decree is something more than an ordinary debt or judgment for money. It is a personal order to the husband, similar to an order of the court to one of the officers or to his attorney. The imprisonment is not alone to enforce the payment of money, but to punish the disobedience of the party; and the order is not, therefore, a debt within the meaning of the Constitution.[22]

Indeed, Delaware courts have held that "[m]arriage, ..., is not a contract, but it is a relation or status defined and established by law."[23] This Court too holds that the privileges and obligations owed by a husband and wife to each other in marriage are different than the privileges and obligations owed by any others in a contractual relationship. It follows that, upon the dissolution of a marriage, the duties and obligations owed by a husband and wife to each other differ from those owed by other contractual parties. As such, this Court, based on the circumstances underlying this action, finds it impossible to classify the sequence of events related to the dissolution of this marriage and the relationship of the parties to each other controlled by principles of standard contract law.[24]

**20.** *Id. See,* also *Yeager v. Yeager,* Mo. Ct. of App. E. Dist., 622 S.W.2d 339 (1981); *Harvey v. Harvey,* Colo.Supr., 153 Colo. 15, 384 P.2d 265 (1963); *Decker v. Decker,* 52 Wash.2d 456, 326 P.2d 332 (1958).

**21.** *Ex parte Phillips,* 43 Nev. 368, 187 P. 311 (1920).

**22.** *Id.* at 311.

**23.** *Cohen v. Cohen,* Del.Super., 84 A. 122 at 123 (1912).

**24.** This holding does not conflict with our Supreme Court decision of *Rockwell v. Rockwell,* Del.Supr., 681 A.2d 1017 (1996). In *Rockwell* the Court held that with parties to a contract regarding alimony, any modification sought would be decided by contract law and not by our modification statute. The Court held that our alimony modification statute applied only to Court ordered alimony.

## THE DEFENSE OF IMPOSSIBILITY

■ Husband alternatively contends that he does not now have the ability to pay the judgment ordered by the Court and the defense of impossibility should insulate him from the relief sought by wife. Once wife has made a showing that husband has failed to abide by the Court's order, the burden to prove the inability to pay rests with husband. "So where a court order and its violation are established or admitted, the burden is on [the husband] to show facts which will excuse his default and if the defense or excuse is that of inability to comply with the order the [husband] has the burden of proving such inability that is real and not occasioned by his own acts." [25]

In the instant case, husband, in an effort to show his inability to pay, 1) testified to his present monthly income and expenses, 2) presented letters purporting to be from three lending institutions which on their face indicated husband's loan requests would not be granted, and 3) presented the testimony of his current wife indicating that she would not agree to obligate herself to any joint debt for husband regarding this action.

In reviewing this evidence, the Court is satisfied that husband has not shown an inability to pay and has, therefore, failed to meet his burden of demonstrating impossibility. Moreover, the Court is satisfied that husband attempted to deceive the Court in his testimony regarding his income and expenses. It was only on cross examination that the Court learned that husband was claiming all of the household expenses of not only himself but his wife and child while listing only his income and excluding the $18,300 annual income of his wife. It seems unfair to the Court for husband to claim all household expenses while his current wife's income is not considered. It must not be forgotten that "the very special and unique jurisdiction of the Family Court requires complete candor and fairness by parties to proceedings before it." [26]

Husband also testified about his efforts to obtain financing at three lending institutions. While husband presented letters from each of these three lending institutions denying husband a loan, husband offered no other evidence regarding what efforts went into the loan requests. He did not offer the loan applications which would reflect the information that he submitted to the lending institutions such as his income, assets and liabilities. Moreover, husband offered no evidence as to the basis for his loan rejections. In short, husband presented little evidence upon which the Court could make a reasoned judgment on the efforts of husband to obtain financing.

It also appears that husband took steps to protect assets from wife's judgment by his incorporation of his masonry business after the *fi. fa.* attachment was stayed. In fact, it appears to the Court that husband, instead of making efforts to satisfy this judgment, has instead invested his energy and assets into the avoidance of satisfaction of the Court's order.

## CONCLUSION

■ This Court has previously stated that in order for wife to prevail, she must show by clear and convincing evidence that the three criteria to support a finding of contempt have been satisfied. First, there must exist a valid mandate, judgment or order. The March 5, 1997 order of this Court was not appealed and remains a valid order. Husband has stipulated that he has not satisfied the terms and conditions of that order. Therefore, the first requirement for a finding of contempt has been met.

---

**25.** 17 C.J.S. Contempt § 84(4). *See, also, State of Delaware v. Atlas Sanitation Co., Inc., & Walton,* 1988 WL 88494 (Del. Ch.) (1988).

**26.** *Schmeusser v. Schmeusser,* Del.Supr., 559 A.2d 1294 at 1296 (1989).

Second, the alleged contemptor must have had the ability to abide by the valid mandate, judgment or order. Husband has failed to demonstrate to this Court that he is unable to obey and satisfy the Court's order. This portion of the test for a finding of contempt has also been met by wife.

Lastly, the alleged contemptor must have, in fact, disobeyed the valid mandate, judgment or order. The evidence is undisputed that husband has not fulfilled all of the terms of the order. Thus, the third and final element to a finding of contempt has been met.

Husband has argued in this case that to incarcerate him for failure to comply with the court's order would constitute the sanctioning of a debtor's prison. The Court is convinced that this is not the case.[27] First, this Court has not been provided with any authority by husband, nor could the Court locate any such authority that would suggest such action would violate our state constitution, statutes or case law. Secondly, even if our state constitution had such a prohibition as suggested by husband, this Court has held that the money owed to wife by husband is not a debt in the sense of a business transaction which would form the basis for relief such as contemplated by some state constitutions.[28] Third, this Court is not incarcerating husband for his failure to pay a debt. Rather, this Court is sanctioning husband for his failure to abide by a directive of the Court. This is a coercive and remedial measure taken by the Court in an attempt to convince husband that he must conform to the Court order under which he labors. He and he alone holds the key to compliance for as soon as he is willing to comply, the contempt will be rectified. It is in this way that the Court is imposing a civil, not criminal, finding of contempt against husband and it is in this way that husband's arguments in opposition fail.

■ The Court is mindful that with the authority to incarcerate comes the responsibility that this authority should be used as a last resort and not a first resort to obtain compliance with the Court's order. This Court has carefully reviewed the evidence presented. Respondent's actions demonstrate an intentional resolve to satisfy the Court's order only on his terms, and his conditions. Husband has not satisfied the Court's order within the time frame given in its March 5, 1997 decision and he has offered no workable plan to satisfy this order. Accordingly,

**IT IS ORDERED** that Charles C. Givens is hereby committed to the custody of the Department of Adult Corrections for placement at Level V until (1) space becomes available at Level IV, the Sussex County Work Release Center, or (2) the sum of $46,164.41 is paid in full to Sandra K. Watson. This matter shall be reviewed on February 9, 2000, at 9:00 a.m. if said amount has not previously been paid.

---

27. *See,* 10 *Del. C.* § 7301 *et. seq.*

28. *See,* FN 20.