IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TOBIAS COOK, | § | |
| | § | No. 187, 2021 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN15-02168 |
| EVA COOK, | § | Petition No.: 19-34326 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: January 12, 2022
Decided: February 23, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

## **O R D E R**

(1)     This is an appeal from a final Family Court order holding Tobias Cook (the "Husband") in contempt for failure to comply with a Property Division Stipulation and Order (the "Stipulation"). The Stipulation divided marital property with his former wife, Eva Cook (the "Wife"), following their divorce.[1] He makes four claims on appeal. First, he contends that the Family Court erred when it held him in contempt for failure to make prompt payments of certain stock awards under the Stipulation. Second, he contends that the Family Court erred when it ordered him to pay the Wife her share of the net value of stock options with interest before

---

[1] Pseudonyms were assigned to both parties on appeal pursuant to Supr. Ct. R. 7(d).

the net value of the stock options could be calculated.  Third, he contends that the Family Court erred when it awarded the Wife nearly all of the attorney's fees she requested because the vast majority of those fees could have been reasonably avoided.  Finally, he contends that the Family Court abused its discretion by awarding the Wife attorney's fees tenfold in excess of the amount of the stock options in controversy when those attorney's fees were almost all incurred after the Wife received the disputed funds and after the Husband offered to settle the matter. We have concluded that the Family Court's order should be affirmed.

(2)    During the marriage, the Husband worked at Air Liquide, and following Air Liquide's acquisition of Airgas in 2016, the Husband became Senior Vice President of Human Resources at Airgas.  During his time with Air Liquide and Airgas, the Husband was awarded various incentive awards, including:

1.    Air Liquide Phantom Stock Appreciation Rights (PSARs) issued to Husband in 2013, 2014, and 2015, which vested over five years.

2.    Two lots of Air Liquide Performance shares: 130 shares allocated on 9/28/2015 and 266 shares allocated on 11/29/2016, which vested over four years.

(3)    The Husband initiated divorce proceedings on July 6, 2015.  After the parties divorced, they entered into the Stipulation, which resolved their property division.  An order approving the Stipulation was issued on May 30, 2018.  The relevant parts of the Stipulation relating to the division of the Husband's

aforementioned awards are as follows:

    **I.**    <u>**MARITAL PROPERTY**</u>. . . .

    **G.**    <u>**Stock/Options/PSARs/Performance and Conditional Shares**</u>

    2.)    Wife shall receive 65% of the net value of Husband's 2013 (3500 PSARs) and 2014 (5000 PSARs) *if, as when they vest*.

    3.)    Wife shall receive 60% of the net value of the following *if as when they vest:* . . .

        c.    Husband's 9/28/2015 2015 Air Liquide Performance Shares (130) . . .

    5.)    Husband will take the steps necessary to promptly exercise and/or claim his right/shares as soon as each lot become available and he shall ***promptly*** provide [Wife] with her share of the funds. Net value is equal to the gross proceeds received by [Husband] less any mandatory withholdings (e.g. social security but not tax withholding), brokerage/transaction fees, and the actual taxes payable due to the vesting/exercising of the award (not the taxes withheld). [Husband] shall provide quarterly statements and copies of documentation regarding the value of these assets, vesting, exercise, and all taxes or costs associated with the assets. [Husband] shall also provide copies of his tax returns and a pro forma calculation with and without the income from the long term incentive award payout in order to determine the tax effect. [Wife] will have 30 days to have her accountant review the tax calculation. If the parties disagree on the tax calculation, then the amount disputed will be set aside in a separate account and the parties will engage in mediation to try to resolve. . . .

## VI.   EXCHANGE OF DOCUMENTS.

Each party shall execute and deliver to each other documents, which are reasonably necessary to carry into effect the provisions of this Stipulation and Order. The parties expressly agreed the provisions of 13 *Del. C.* § 1513(f) shall be applicable.

## VII.   BREACH OF STIPULATION AND ORDER.

In the event either party breaches any provision of this Stipulation and Order, he or she shall be required to pay the other party's reasonable legal expenses including attorney's fees, for prosecuting such breach.

## VIII.   DISCLOSURE.

The parties warrant and represent that he and she has made a full and accurate disclosure of the assets and liabilities of the marriage of which he and she are aware, and the parties have entered into this Stipulation and Order in reliance upon the disclosure and representation made.[2]

(4)   On December 6, 2019, the Wife filed a Petition – Rule to Show Cause against the Husband, and at trial made the following arguments:

1. Husband did not supply documents as required by the Stipulation or the Request for Production of Documents.

2. Husband paid Wife her share of the 2013 PSARs late.

3. Husband still has not paid Wife her share of the 2014 PSARs.

---

[2] App. to Opening Br. at A0034-35, A0037-38 [hereinafter "The Stipulation"] (emphasis added).

4. Husband has not paid Wife her share of the 2015 Performance Shares.[3]

The Wife sought a finding of contempt, interest on the amounts the Husband failed to timely pay, and an award of attorney's fees. A hearing on the Rule to Show Cause petition was held over the course of two days: August 12, 2020, and September 16, 2020.

(5) The Family Court first found that the Husband was in contempt of the order for failing to supply the appropriate documentation to the Wife. Paragraph I.G. of the Stipulation provides that the Husband is to deliver to the Wife quarterly statements and documentation relating to the valuation, vesting, exercise, and taxes associated with the assets. On multiple occasions throughout 2019, the Wife requested the quarterly statements and any information on the awards from the Husband, and even subpoenaed the Husband's employer for documents sent to the Husband that he did not provide to the Wife. The court found that it was undisputed that the Husband failed to provide the Wife with quarterly statements, failed to give the Wife documents from his company relating to pertinent information about these assets, and supplied the Wife with his 2018 tax return one year after he received the return. The Husband has not appealed this ruling by the court.

(6) The Family Court next held that the Husband paid the Wife her share

---

[3] Opening Br. Ex. A, at 2 [hereinafter Op.].

5

of the 2013 PSARs late. Under the Stipulation, the Wife was to receive 65% of the net value of the 2013 PSARs "if, as when they vest."[4] These awards vested in May 2018, and the Husband sent the proceeds and his 2018 tax return to the Wife in February 2020 and May 2020, respectively. The Husband, however, failed to send the Wife a pro forma tax calculation, as required by the Stipulation. Because the Stipulation requires the Husband to pay these awards "promptly," the court found the Husband's 22-month delay in payment to be in contempt of the order approving the Stipulation. The court further found that the Husband did not purge his contempt when he eventually paid the Wife because he provided no reasonable explanation as to why he did not make the payment earlier, and, even after he paid, he failed to provide his tax return and the pro forma tax calculation promptly—documents that were meant to assist Wife in determining whether the payment was accurate.

(7) The Family Court also held that the Husband was in contempt of the order approving the Stipulation by failing to pay the Wife her share of the 2014 PSARs. The Stipulation requires the Husband to pay the Wife 65% of the net value of the Husband's 2014 PSARs "if, as when they vest."[5] The court found that the Husband's 2014 PSARs vested in May 2019, and, at the time of the hearing, the Husband had not provided the Wife with her share or any information regarding the

---

[4] The Stipulation, at A0034.
[5] Id.

payment. The Husband argued that he could not pay the "net value" of these assets until he filed his 2019 tax return, which his accountant had yet to do by the time of trial in September 2020. The court rejected the Husband's defense and explained that the Stipulation requires the Husband to provide the Wife with her share of the assets promptly, not after his taxes for the year are completed. Any disputed amount based on tax consequences, the court explained, was to be held in a separate account and resolved by mediation.

(8)     The Family Court next found that the Husband had not paid the Wife her share of the 2015 Performance Shares. The Stipulation required the Husband to pay the Wife 60% of the net value of these shares "if as when they vest."[6] At trial, it was undisputed that the Husband was issued 130 shares in 2015 that vested in September 2019 and were sold in December 2019. In October 2019, the Husband received an email from his employer, which contained an estimate of the tax liability on the 2015 Performance Shares. It was also undisputed that the Wife had not received her portion of these shares. The court again rejected Husband's argument that he could not pay Wife until he filed his tax return.

(9)     The court further found that the Husband's argument that the Wife failed to mitigate damages was without merit. It found that although the Husband eventually paid the Wife her share of the 2013 PSARs, his withholding of documents

---

[6] *Id.*

7

necessary for the Wife to determine whether the payment was for the appropriate amount made it impossible for her to mitigate her damages.

(10) As a sanction for the Husband's contempt, the court ordered the following:

1. Husband shall pay Wife interest at the legal rate on the amount of $3,380 from the time he received the proceeds from the sale of the 2013 PSARs in approximately May, 2018 until he provided his 2018 tax returns to Wife in May, 2020.

2. Husband shall pay Wife her share of the 2014 PSARs with interest at the legal rate from the time he received the proceeds of the sale until the date he paid Wife or pays Wife, if he has not already done so, her share of the proceeds.

3. Husband shall pay Wife her share of the 2015 Performance Shares with interest at the legal rate from the time he received the proceeds of the sale until the date he paid Wife or pays Wife, if he is not already done so, her share of the proceeds . . . .

6. . . . . To the extent that Wife's Motion requests that Husband be required to pay attorney's fees, the Motion is **GRANTED**.[7]

(11) When reviewing a decision of the Family Court, this Court reviews "the facts and the law, as well as the inferences and deductions made by the trial judge."[8] Findings of facts will not be disturbed unless they are clearly wrong.[9] "Moreover,

---

[7] Op. at 10-11.
[8] *Wright v. Wright*, 49 A.3d 1147, 1150 (Del. 2012).
[9] *Id.*

this Court will not substitute its own opinion for the inferences and deductions made by the Trial Judge where those inferences are supported by the record and are the product of an orderly and logical deductive process."[10] Conclusions of law are reviewed *de novo*, but if the law was correctly applied, the decision is reviewed for an abuse of discretion.[11] "The standard of review for an abuse of discretion is whether the Family Court's decision was arbitrary or capricious."[12]

(12) The first issue raised by the Husband is whether the Family Court erred when it found the Husband in contempt for failure to make timely payments to the Wife. For the Family Court to find a party in contempt of an order, the petitioner must show by clear and convincing evidence that: 1) a valid mandate, judgment, or order exists; 2) the alleged violator has the ability to abide by the valid mandate, judgment, or order; and 3) the alleged violator disobeyed the valid mandate, judgment, or order.[13] There is no dispute about the Stipulation being a valid order, or whether the Husband had the ability to abide by the order. Therefore, the only issue is whether the Husband disobeyed the Stipulation.

(13) The evidence was uncontroverted at trial that the Husband paid the 2013 PSARs late and failed to pay the 2014 PSARs and the 2015 Performance share. Therefore, to support his argument that he did not violate the Stipulation, the

---

[10] *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).
[11] *Wright*, 49 A.3d at 1150.
[12] *Id.*
[13] *Watson v. Givens*, 758 A.2d 510, 512 (Del. Fam Ct. 1999).

9

Husband first contends that the Family Court did not properly interpret the Stipulation. Pursuant to the Stipulation, the Husband is required to "promptly" pay the Wife a percentage of the "net value" of these awards.[14] Net value is defined in the Stipulation as "the gross proceeds received by [the Husband] less . . . the actual taxes payable due to the vesting/exercising of the award (not taxes withheld)."[15] The Husband contends that he can only determine this net value after he has filed his tax returns and determined the actual tax liability. Therefore, the Husband argues, the plain meaning of the Stipulation would suggest that the Wife can only receive her designated percentage of the net value after the Husband files his tax returns, not once he receives his award. The duty to "promptly" pay the Wife her share of the funds, he contends, attaches after the net value is determined by the tax filings.

(14) The Husband's argument is unpersuasive. First, the plain meaning of the Stipulation's language does not support the Husband's assertions. The Stipulation requires him to pay the Wife these proceeds "promptly," not after the Husband's tax returns have been filed. Further, net value is defined as the gross proceeds less actual taxes payable, not less actual taxes already paid. Given that the Husband's income comes from his yearly salary, a yearly bonus, and the proceeds from these awards, the taxes payable on the awards can be easily calculated as soon

---

[14] The Stipulation, at A0034.
[15] *Id.* at A0035.

as the Husband ascertains the sum of the awards. Furthermore, the Stipulation sets out a process for the Wife to verify the Husband's tax calculation and set aside any amounts in dispute. Such a process would be meaningless if the Stipulation required Husband to first file his tax returns before paying the Wife her proceeds.

(15) The Husband further argues that contempt cannot be found unless the order provides notice in "definite, certain and specific . . . terms," and "promptly" is not a certain enough term to be the basis of a contempt finding. Rather, the Husband argues, the proper recourse for the Wife was specific performance under the implied duty of good faith and fair dealing. Relying on *Harris v. Frank-Harris*,[16] the Husband argues that specific performance differs from contempt, and that this Court has found that a party will not be held in contempt "unless he fails to comply with the Family Court's order."[17] Because there was not a definite timeframe for Husband to perform under the Stipulation, he argues, the Family Court could not have held him in contempt and the only appropriate recourse for the Wife was specific performance.

(16) We find no merit to the Husband's argument. The Stipulation gave the Husband clear notice that funds were due promptly when each award vested. The Husband argues that the Family Court's decision creates a rule where he would be

---

[16] 2014 WL 1003588 (Del. Mar. 7, 2014) (TABLE).
[17] *Id.* at *2.

11

held in contempt immediately upon receipt of his award "unless he pays Wife equal to or in excess of the exact amount ultimately owed."[18]  However, as the Husband points out, a party is not held in contempt for a mere technicality.[19]  The Husband did not make a good faith effort to pay the Wife.  Rather, the Husband actively concealed information from Wife, ignored multiple requests from the Wife for documentation related to the awards until she subpoenaed his workplace, waited 22 months to pay the Wife her share of the 2013 PSARs, and as of the trial, had yet to pay the 2014 PSARs and the 2015 Performance shares.

(17)    The next issue is whether the Family Court erred when it ordered the Husband to pay the Wife her 2013-2015 shares with interest at the legal rate from the time he received the proceeds of the sale until he paid the Wife.  The Husband argues that the Family Court erred by so ordering because the Stipulation does not provide for such a remedy, and the court essentially rewrote the Stipulation to add this measure.

(18)    The Family Court has the power to determine and punish civil contempt, which includes the assessment of fees, costs, and fines.[20]  The remedies for a finding of contempt serve two purposes: to coerce compliance with the order and to remedy the injury suffered by the other party.[21]  The Family Court frequently

---

[18] Opening Br. at 19-20.
[19] *M.B. v. E.B.*, 28 A.3d 495, 500 (Del. Fam. Ct. 2011).
[20] 10 *Del. C.* § 925(3), (10).
[21] *Del. State Bar Ass'n v. Alexander*, 386 A.2d 652, 665 (Del. 1978).

awards interest as a remedy for violating a court order.[22] Such a cost disincentivizes potential violators from holding a party's rights hostage and delaying the division of property. Further, Delaware courts have found that interest is treated as a "matter of right"[23] and the "obligation to pay interest remains regardless of whether the agreement or contract includes a provision relating to interest."[24] We find that the Family Court properly exercised its authority and discretion in ordering the Husband to pay interest on the awards. Such an award for the Wife disincentivizes the Husband from delaying payments in the future and reimburses the Wife for her loss of the ability to invest or use the funds during this period.

(19) The Husband next contends that the Family Court erred by finding that the Wife acted reasonably to avoid and mitigate her damages. The Husband argues that by May 2020, the Wife had received and reviewed her share of the 2013 PSARs and the Husband's 2018 tax return. Therefore, the Husband argues, the Wife had been made whole under the Stipulation by May 2020, and the majority of the awarded attorney's fees were incurred after this period.

(20) "A non-breaching party need not hazard undue risk, burden, or

---

[22] *See, e.g.*, *N.L. V. G.L.*, 2018 WL 1702530 (Del. Fam. Mar. 28, 2018) (granting an award of interest at the legal rate for past due child support); *S.T.S. v. W.S.*, 2012 WL 1649805 (Jan. 23, 2012) (granting an award of interest for missed alimony payments even though the divorce stipulation did not provide for such a remedy).
[23] *Metro. Mut. Fire Ins. Co. v. Carmen Holding Co.*, 220 A.2d 778, 781 (Del. 1966); *S.T.S.*, 2012 WL 1649805, at *3.
[24] *S.T.S.*, 2012 WL 1649805, at *3.

13

humiliation in mitigating costs and damages. Mitigation is subject to a rule of reasonableness, and whether a loss is mitigable turns on the circumstances."[25] In finding that the Wife acted reasonably to mitigate damages, the Family Court noted that the Husband had paid the Wife the share of her 2013 PSARs 22 months late and had withheld documentation that the Wife needed to determine that the check was for the correct amount, making it impossible for her to mitigate her damages. The Husband was in the best position possible to procure the required documents, and the Wife took multiple steps to receive those documents, including contacting the Husband directly on multiple occasions and subpoenaing documents directly from Airgas. Although the Husband paid the Wife's share in February 2020, and handed over his tax returns by May 2020, the Stipulation required him to give the Wife quarterly statements and other documents to determine her appropriate share. Therefore, we find no merit to the Husband's contention that the Wife did not act reasonably to mitigate her damages.

(21) In addition, as discussed above, we have found that the Husband also failed to comply with the Stipulation when he delayed his payments on the 2014 PSARs and 2015 Performance shares. Therefore, the Husband continued to breach the Stipulation even after he paid the Wife her 2013 PSARs share. The Husband

---

[25] *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009).

14

claims that his payment "cure[d] any breach"[26] as of May 2020, but that is not the case. The Husband continued to violate the Stipulation through trial and the Family Court properly held him in contempt of the order. Therefore, the Wife is owed for reasonable attorney's fees well past May 2020.

(22) The last issue raised by the Husband is whether the Family Court abused its discretion when it awarded the Wife approximately $32,000 in attorney's fees. The Husband argues that the Family Court's order was inherently an abuse of discretion because no explanation was provided by the court for the award. The Husband points to the order assessing fees, which merely states that the Husband owes the Wife her "<u>reasonable</u> counsel fees."[27] The Wife maintains that the Husband's argument is procedurally barred because it was not presented to the court below. The Husband argues that he could not have objected to the court's lack of explanation before the order was issued. Whether or not the issue was preserved for appeal, we find that the Husband's substantive argument has no merit.

(23) "The [Family] Court has broad discretion in determining whether to award attorney's fees pursuant to Section 1515."[28] "The fact that the [Family] Court has a broad discretion does not mean that such an award can be made arbitrarily"[29] "and a statement as to the reason for an award of costs and fees should appear in the

---

[26] Opening Br. at 30.
[27] App. to Opening Br. at A0582.
[28] *Gray v. Gray*, 503 A.2d 198, 204 (Del. 1986).
[29] *Husband B.W.D. v. Wife B.A.D.*, 405 A.2d 123, 125 (Del. 1979).

record."[30] Where a trial court does not provide a reason for its judicial decision to award attorney's fees, this Court has found that the decision can be affirmed "if, upon a reading of the record in relation to the order, the reasons appear obvious."[31] Therefore, such rulings "will not be disturbed so long as there is evidence to support the Court's findings of facts."[32]

(24) This Court has routinely upheld awards of attorney's fees that are based on an extensive record. In *Wheeler v. Wheeler*, this Court noted:

> The Family Court ruled upon the Husband's application for attorney's fees in the context of a record which had been developed in that court over a period of years.
>
> In this case, the Family Court had before it the Husband's motion for attorney's fees, supported by sworn affidavits; the Wife's response to that motion; and its own complete record and prior rulings. That record provided a basis for its decision in accordance with 13 *Del. C.* § 1515, Family Court Civil Rule 88, and Rule 1.5 of the Delaware Lawyers' Rules of Professional Conduct.[33]

(25) The Husband argues that the reasons set out in the Rule to Show Cause order discuss only the issue of entitlement of attorney's fees, not the reasonableness of those fees. The Husband contends this is an important distinction due to his mitigation defense. However, the court did consider his mitigation defense in its Rule to Show Cause order and found it to be without merit. The Husband is not

---

[30] *Lee v. Green*, 574 A.2d 857, 859 (Del. 1990).
[31] *Husband M v. Wife D*, 399 A.2d 847, 849 (1979).
[32] *Walter S.J. v. M. Lorraine J.*, 457 A.2d 319, 327 (Del. 1983).
[33] 636 A.2d 888, 891 (Del. 1993).

arguing about the reasonableness of the attorney's hourly rates, but the Wife's reasonableness in mitigating her damages. We find that based on the extensive record developed at trial and the attorney's fees affidavits, the reason for the Family Court's decision appears obvious and the court, therefore, did not abuse its discretion.

NOW, THEREFORE, IT IS THE ORDER of the Court that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice